# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
|       Plaintiff, ) | |
| vs. ) | No. 04-3057-01/03-CR-W-FJG |
| Manuel Villareal-Amarillas, ) | |
| Juan H. Gonzalez, ) | |
|       Defendants. ) | |

# ORDER

Upon review of the remand decision in this case, <u>U.S. v. Villareal-Amarillas, Gonzalez</u>, 454 F.3d 925 (8th Cir. 2006); the original sentencing transcript; the sentencing memoranda (Doc. #249, 250, and 251); the supplemental charts (Doc. #252 and 253) and the argument of counsel presented at the September 27, 2007 hearing, the Court has reached a decision regarding the credibility of witnesses and drug quantities. However, before announcing that decision, this Court states the following for the record:

      1.      If this Court had the sentencing memoranda (Docs. 249, 250 and 251) and charts (Docs. 252 and 253) at the original sentencing hearing on August 15, 2005, its ability to make a decision would have been much easier.

      2.      The credibility of the government's witnesses - Valentine, Hunter and Flores - was then and is now suspicious and conflicting.

      3.      At oral argument on September 27, 2007, government's counsel recognized that the testimony of these witnesses might reflect double counting.

      4.      These witnesses' testimony is questionable as to quantity of drugs and drug transactions when viewed in light of an ulterior motive to receive governmental favors in return for their testimony.

5. Given the scrambled nature of the testimony as to drugs and drug transactions, defense counsel's analogy in oral argument on September 27, 2007 was accurate. Counsel stated in part " . . . they're asking you to unscramble the egg. They have put a ton of evidence in front of you, none of which really matches up, and they're asking this Court to extract from that a legitimate, discernable amount." (T. 17)

6. My frustration with the evidence was evident in my comments at the original sentencing (August 15, 2005). ". . . I have no evidence to show me that it's any more than that . . . I have heard a lot of poundage and stuff, but I do not know how that equates to the 15 kilograms that you're talking about. That was not made clear to me . . ." (T. 126)

7. Given the nature of the presentation of the evidence, it was clear that these defendants deserved substantial sentences for their drug dealings, but the extent of those dealings was not clear. Additionally, there was no physical evidence of drugs in the quantity suggested by the government. That is why a sentence at the minimum quantity agreed to seemed appropriate.

However, after review of the evidence and sentencing memorandums (Docs. 249–253), I have reconsidered.

I am now convinced, based upon my post-sentence review, that I can conclude by a preponderance of the evidence that there is sufficient reliable evidence to prove that these defendants and other conspirators were responsible for drugs and drug transactions in amounts in excess of 15 kilograms. Here, the Court is required to estimate the quantity of unrecovered drugs based upon quantities described from similar transactions.

The testimony of co-conspirator Brian Valentine alone proves by a preponderance of the evidence that drug transactions during the course of the conspiracy attributable to these defendants exceeded 15 kilograms (Doc #252-2). The minimum range of distribution testified to by Brian Valentine exceed the 15 kilograms argued by the government.

For these reasons, at the sentencing hearing to be held on November 9, 2007, each defendant shall be assessed a base offense level of 38 which reflects the drug quantity for which each will be held accountable. Thereafter, the Court will impose enhancements and credits previously imposed.

/s/Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 11/7/07
Kansas City, Missouri